P. H. WOOD, CLIFFORD WOOD, ETHEL SHAPLAND, Appellants, v. SARAH WOOD, Appellee.

**Appointment of guardian:** MENTAL INCOMPETENCY: EVIDENCE. In a proceeding to procure the appointment of a guardian for an aged person, the evidence is reviewed and held insufficient to show such unsoundness of mind as to authorize the appointment.

*Appeal from Jones District Court.*— HON. J. H. PRESTON, Judge.

ESDAY, JANUARY 9, 1906.

PROCEEDINGS at law for the appointment of guardian over the defendant as a person of unsound mind. There was a directed verdict for the defendant, and the plaintiffs appeal.— *Affirmed.*

*Hubbard, Dawley & Wheeler* and *Park Chamberlain,* for appellants.

*F. O. Ellison* and *Jamison & Smith,* for appellee.

WEAVER, J.— The defendant is the mother of six living adult children, three of whom are plaintiffs herein. About six years before the commencement of this action defendant's husband died, leaving an estate consisting of sev-

eral tracts of farm land and about $1,800 in cash. The amount of other personalty does not appear to be stated in the record. During the year following her husband's decease the defendant and her children made an amicable partition of the estate; the defendant receiving for her share in her own right one hundred and twenty-two acres of land and about $1,000 in money. The children are, and for a long time have been, married and maintaining separate homes of their own. Two of the sons, spoken of in the record as Cass and Clifford, lived nearest to their mother, and to them she rented her land — eighty acres to the former, and forty acres to the latter. The home of Cass was within a few rods of his mother's house, and it appears that by reason of this nearness, and possibly by his greater attention to her needs, she came to place a special reliance upon his help and assistance. A short time before the commencement of this action defendant conveyed to Cass the eighty acres of land which he had before occupied under a lease. The nature of this contract is not clearly stated, but it is inferable that the son, in consideration of the conveyance, undertook to pay his mother during her lifetime a yearly stipend equivalent to a rental of $2.50 per acre. It is also indirectly shown that Cass had expressed some purpose of moving away, and that this conveyance was to some extent induced by the defendant's desire to have her son remain near her.

When this transaction was made known to the rest of the family, this action was begun to procure the appointment of a guardian for the defendant, upon the allegation that she was of unsound mind and incapable of caring for and preserving her property. Most of the material testimony offered in support of the petition was given by the plaintiffs themselves, and by members of their several families, and we may presume that it presents their case in its most favorable aspect. The record thus made tends to show that at the date of the trial defendant was about seventy-

nine years old. . She had been physically disabled for some time as the result of a fall, but seemed to be improving in strength. She was a woman of little education, had some difficulty in counting money and in ordinary arithmetical computations. After her husband's death she lived alone, except as some of her grandchildren or others of her relatives would visit and assist her. She had become somewhat childish and forgetful, and would sometimes mistake her age by a matter of two or three years, and during her sickness it is said she could not always state readily the names and ages of her living children. She gave the date of her husband's death as " six years ago Decoration Day," when the true date was six years ago May 26th. She was very economical in expenditure for her own needs and comfort, dressed scantily, and lived frugally. There were bedbugs in her bed, and a skunk invaded her cellar. During the life of her husband she transacted little business, and it is said that after his death she kept no book of accounts. On cross-examination the plaintiffs concede that, except in deeding the 80-acre tract to Cass, the defendant had not wasted her estate. She acted as administrator of her husband's estate, and, with the help of her sons and of her counsel, settled the same within the usual time. She had been appointed guardian of the minor children of a deceased daughter, and was still acting in that capacity at the time of the trial in the district court. The net amount of money received from her husband's estate she had preserved substantially intact. While most of the checks against her bank account were not in her handwriting, there is no testimony they were not drawn by her authority, or that the money obtained upon them was not applied to her own proper use. There is no claim that she had incumbered her property. Indeed, it is made very clearly to appear that, ignorant as she may have been of business methods, this old lady was in her humble way a prudent and safe manager of her own affairs, unless the favor shown to one

of her sons is to be held a manifest indication of unsoundness of mind. We are of the opinion that, giving this and all the other proved circumstances their most favorable construction in behalf of plaintiffs, there is nothing in the record upon which a finding against the defendant could be upheld, and there was no error in directing a verdict accordingly.

It is hard to resist the conclusion that in the eyes of the plaintiffs the sum and substance of their mother's offending was in conveying the land to Cass, instead of preserving it to be divided among all her children at her death. This conclusion is emphasized by the trivial and inconsequential character of most of the other circumstances related by them, and to which we have called attention. That an old person shows some of the amiable weaknesses of second childhood, that her memory is sometimes treacherous, that she makes a mistake of four days in stating the date of her husband's death, and that in sickness she confuses the names of her living and dead children, is entirely consistent with mental capacity to hold and care for her property. Still less are we prepared to hold that this woman's understatement of her age by a matter of a few years is evidence of mental incompetency. Indeed, we think it safe to say, as a matter of common knowledge, that such lapses of memory in at least one-half of the human race are not at all incompatible with business sagacity of a high order. It is to the credit of plaintiffs that they speak of their mother in terms of the highest respect. They describe her as " a good mother, a kind mother, one who was not only a mother to her own family, but was a mother in the neighborhood, wherever the doctors were called." Her life had been one of care and toil, and it is not a violent presumption that the property set apart to her in the division of her husband's estate had been fully earned by her in assisting him to accumulate it and in rearing his children. It was hers. It was her right to use and dispose of it as she pleased. Her

children had no right or interest in it, except as she might freely and of her own will bestow it upon them, and if, for reasons satisfactory to herself, she desired to give part or all of it to the child who was nearest her, or to whom she felt under special obligation, the others have no just cause of complaint.

There is no evidence that the son receiving the conveyance of land is neglecting his duty to his mother, or is likely to leave her to suffer, from want of proper care and attendance, during the brief remainder of her life already prolonged far beyond the average of human kind. She has for her support the income from the land and from the money in the bank — enough to supply her simple wants; or, if her needs ever called for it, the principal in the bank and the 40 acres of land, to which she retains the title, can be utilized. There is not the slightest room for doubt that her remaining resources are ample to sustain her in reasonable comfort to the end of her journey. Such being the case, the conveyance to her son has no tendency whatever to prove mental unsoundness. She has acted wholly within her rights, and, until her incompetency shall have been clearly established, she ought not to be subjected to the indignity of guardianship.

The judgment of the district court is right, and is *affirmed*.